Good morning, Your Honors. Our argument boils down to this. Throughout this action, Target has not presented any document except for the confidential memo that purports to be an actual offer of sale, so that we can closely examine the language of the offer itself as required by this Court in Group 1. We think the Group 1 requirement is sensible, because without examining the language of a proposal, you can't tell whether it really represents a definite, commercial-level offer of sale. As this Court said in Group 1, in any given circumstance, it can be difficult to tell who the offeror is, or whether a proposal or set of interactions constitutes a definite offer. A proposal promoting a product might be nothing more than an invitation for offers, while responding to such an invitation may itself be an offer. That's why it's important to closely examine the proposal itself, the language of the proposal itself. If we look at the appendix, page 196, there seems to be a order form for roundabout seats sent out to customers on August 12. That is the confidential memo. And why isn't that an offer for sale? It's not an offer for sale because it is not set between separate entities. It's not between separate entities. What's that mean, not between separate entities? Well, that means that the sender of the memo, Stanford, is sending it to its own organization, its own baby news organization. And in order for an offer to be a commercial-level offer of sale, it has to be an offer between separate entities. Henry Kavini states that quite clearly. So that's our contention, that the only document that we have, and you're always correct in pointing out the confidential memo, that this is the only document presented that actually purports to be an offer of sale. What our contention is, is that it's... Look at the top here. We recently attended a sales meeting over this weekend. Some development, a seat, so on and so forth. Right. What's a sales meeting? Well, a sales meeting was a sales meeting that Britax held. The Stanford Distributing Company attended that meeting. Stanford Distributing Company was a prospective purchaser of these car seats on behalf of its baby news organization. And that brings us to the issue of fact. Why isn't that evidence of an offer for sale at a sales meeting? Because it's not between separate entities. This is merely a communication alerting where Stanford... So when Britax talks to Stanford, they're not talking to a separate entity. When Stanford talks to the dealers, he's not talking to a separate entity. No, no. When Britax... No? No. When Britax and Stanford are separate entities. Well, so why, when Britax was talking to Stanford at the meeting, wasn't it making an offer for sale? There's been no evidence presented that there was an offer of sale made by Britax to Stanford. There's no evidence of that. I thought there was not. They're not documents, but I thought there was testimony that that's what happened at the meeting. No, actually. There's nothing... Pardon me, I just want to finish answering to... There's nothing that allows us to examine any kind of reported offer from Britax to Stanford. Nothing. What do you mean, nothing allows us to? To examine the language of the proposal itself as required in Group 1. But there was evidence that a proposal was made from Britax to Stanford, right? But there's no evidence that that proposal rises to the level of a commercial, definite commercial level offer of sale. Well, why not? Well, not... Well, I can't say because there's no evidence of it. There's no... Not all interactions between companies and even offers rise to the level of a commercial level offer of sale. Only offers which are definite and that by mere acceptance and nothing more can create a binding contract, only they constitute definite commercial level offers of sale. And no such evidence was presented. What number do we have at A6, 634, 637, 639 that list the roundabout? Let's see. Activities here. Forecasts, etc. Yes, but this material does not meet the high standard of proof required in Group 1. There's no pre-sales order. To tell you the truth, there's nothing surrounding these documents that explains what they are. You don't know whether they're binding offers. You have to look at the situation here. I mean, these seats have not even yet been manufactured. And so these may indicate, could very well indicate, preliminary indications of interest from customers that weren't binding commercial level offers of sale. But that's our point. This material does not rise to the level of proof required in Group 1. But you actually have to look at the language of the offers themselves. We don't have any of the order forms here. We don't have any of the purchase orders or order forms. Let's go to someplace else. Let's go to the declaration of Roger O'Kelley, the Stanford Distributing Corporation. And he's saying such things as, on August 8th and 9th, I attended a Britax sales meeting. I received copies of the sales meeting. It was also agreed that Roundabout was ready for sale. Very shortly after that, I prepared a sales offer. He's talking about the confidential memo. He has not mentioned anything about any kind of binding commercial level arrangement between Britax and Stanford. There doesn't have to be any sale. No, I understand that. But it can't be just any offer. Let's hit the key point here then. This offer to sell the Roundabout seat included the wholesale price, $120, suggested retail price, $199, minimum order, six per store, color, burgundy, shipping terms, estimated ship date, requirement. Do I need to go further? Well, here's what I'd say about that. We're talking about the confidential memo again that we just covered, that Your Honor pointed out in the appendix. Yes, I understand. Yes. But he's saying there's an offer to sell, and he's giving prices, and he's giving distribution times, and receiving dates, and it's all the product, the Roundabout seat that he has to claim future. It is a communication from Stanford to its own baby news organization. That's what's represented by the confidential memo. That's what he's talking about. He's not talking about anything different, just the confidential memo. What is that statement saying? I faxed and mailed this order form to the West Coast Retailers on August 4, 1997. Right. Those are the baby news stores. Every single one of those retailers that it was mailed, that it was faxed to, was a baby news store. And Stanford does business as baby news. But Stanford's getting this offer from Britax, right, a separate party making this offer to them to sell the product? Isn't the product with the claim feature on sale? No, because… No, why not? Because the only piece of evidence where you can actually look at it and see whether it's a… is the confidential memo that Your Honor is pointing out. We've got this declaration that says he's getting a sales price given to him by Britax in early August. Right? Am I misreading it? No, but what he's talking about is the confidential memo. He's not talking about anything different. And our argument is that the confidential memo… No, he's talking about what was agreed to at the August 8 and 9 sales meeting. It was also agreed at the sales meeting the roundabout was ready for sale. I prepared a sales offer. Right, the confidential memo. I faxed this offer. I believe Exhibit A seemed to be a copy of the sales offer. I think that's what you're talking about. Right, that's exactly it. It's a copy of the sales offer. An order from an entity. But our… Evidence is on sale. Don't we have evidence that's on sale? No, our point is that that confidential memo is not between separate entities. There's a genuine issue of fact on this that was in the… Is your conclusion that the confidential memo doesn't reflect the offer that Britax made at the August 8 and 9 meeting? Our contention is that the confidential memo is an offer… You're not answering my question. My question is, is your contention that the confidential memo is not an offer for sale because it doesn't accurately embody the terms that Britax announced at the August 8 and 9 meeting? No. Our argument is different. Our argument is that it is not an offer for sale. It is not a firm, commercial-level offer for sale because it's not between separate entities. The confidential memo is simply… But if the confidential memo embodies the offer that was made at the meeting, why isn't it evidence of an offer for sale that was made at the meeting? You're saying that… Is your question… Is your point that… I want to understand it. Is your point that there was an offer of sale made at the meeting between Britax and Stanford? Yes. Okay. Our argument is not all interactions and offers rise to the level of firm, commercial-level offers of sale. But that's perfectly clear. But the question is, did what happened in the August 8 and 9 meeting constitute an offer for sale? And there's an affidavit here talking… Judge Rader was pointing out to you what happened at the meeting. And then Stanford embodies this information in this confidential memo. It looks like an offer for sale. It has all the terms to it. What's the problem? From who to whom? From Britax to Stanford and communicated by Stanford to the dealer. Well, actually, no. Because there's an issue, an important issue of fact here having to do with, was Stanford, in its dealings with Britax, acting as a prospective purchaser of these seats? In other words, acting to buy them on behalf of its baby news organization? Or was Stanford merely an agent of Britax? Now, we contend that, and there's evidence in… But the offer to sell included the price. There's an offer to sell. These things aren't being given to Stanford to be given to its retail outlets. It's a sales transaction. No, but the point is that, as I was saying, there's a genuine issue of fact as to whether Stanford was merely acting as a sales agent for Britax or whether it was buying the seats. But the point is the seats on sale. In other words, the relationship between the parties becomes, I think our confusion is the statute makes that somewhat irrelevant as long as the product embodying the claimed invention was on sale to anyone. But I think you could probably even put it on sale within your own organization. Sell it to your own employees. Actually, that might be true, but the offer has to be between separate entities in order to be a commercial level offer of sale. I agree that Britax is separate from the ultimate dealers, the recipients of the confidential memo, right? Yes. So? But the offer is from Stanford, is between Stanford and its baby news stores. So it's on sale. No, because Stanford and its baby news stores are the same organization. And they have put it on sale to the local distributors. They're the same organization. It's a collective buying organization. What Stanford was doing in the confidential memo was merely alerting its organization to a collective buying opportunity. Where is that evidence? The evidence that Stanford was acting on behalf, that it was acting as a prospective purchaser, and on behalf of its baby news stores, is evidence in, if you look at our brief, in Paige's, let's see, there's quite a bit of evidence on that. If you look at our brief on Paige's... By the way, the declaration of Mr. O'Callaghan calls Stanford an independent distributor, not a subsidiary of Britex, an independent distributor of seats that were designed by someone else. And that's her point exactly. You've hit the nail on the head in terms of the issue of fact here. There's plenty of evidence in the record that Stanford was a prospective purchaser, not an agent of Britex. An independent distributor, a prospective purchaser of these seats. Let's hear from Mr. Adams, Mr. Galbraith. Mr. Galbraith. We'll give Mr. Galbraith back two minutes of his rebuttal time, so if you could give Mr. Adams an additional two, should he need them, use it. May it please the Court. Let's turn first to Judge Garbus' opinion. Page 9, Appendix 9. He addresses this issue of buying organization. Brite Ideas has, ever since they saw this memo number 61, has tried to shoehorn Stanford and its independent retailers into the same shoe. This same argument was made in front of Judge Garbus, and if you're honest with a look at page 9, that argument is demolished. By reference to Mr. O'Callaghan's second declaration, which appears at page 409 of the appendix. And he addresses this issue forthrightly. He says under oath that these distributors, these retailers, are not associated or affiliated with Stanford. They're not owned. They're independent, operated retail stores. And it's all set out on page 9 of Judge Garbus' opinion. In fact, Judge Garbus points out that the only evidence that Brite Ideas offered on this whole theory was some printouts from a 2006 website purporting to establish material issues of fact regarding something that happened in 1997. And he closes with a statement from those printouts, which says the baby news printout states that baby news stores are locally owned and operated. It's a red herring. And the record is actually quite clear about what happened. There is simply no issue of fact regarding the fact that Mr. O'Callaghan sent out this memo on August 12th and that long before the critical date orders were coming in. Was Stanford an agent of Britex? Stanford was an agent of Britex. It was offered to go out. It was authorized. Where does the record show that it was an agent of Britex? Well, Mr. O'Callaghan refers to Stanford as an authorized agent, an authorized distributor of Britex. And I think DeJuan mentioned a few moments ago, it doesn't matter what labels you hang on it. The fact is that I understand the argument that it doesn't matter. But I'm just wondering, where does the record tell me? Is there an affidavit that says that Stanford's an agent of Britex? The O'Callaghan declaration states that Stanford is an authorized sales representative of Britex, along with the other attendees at the meeting. And I think this is an appropriate time to mention Mr. Fritz. Britex doesn't talk much about Mr. Fritz. Mr. Fritz was also at the sales meeting. Totally unrelated to Stanford in any way, shape, or form, lives in the Midwest. He also says that shortly after the same sales meeting, he went out and started calling on his customers, offering exactly the same roundabout seat for sale, and that he tendered acceptances back to Britex before the critical date. Now, if you look at Britex, that is in the appendix at appendix 204. And I think it's paragraph 6, Your Honor. I see. You may proceed. Just finally, Your Honor, I really think we all read the briefs. And I think our brief holds together pretty well. I think it's clear that Judge Garbus hit the relevant points. I would just point the court to a statement made on page 6 of Britex's own brief, where they say that Target has presented a Britex open order and sales report. This is the one that appears on appendix 639, Judge Weber, that you mentioned earlier, showing August 1997 orders. Well, that statement is absolutely true. And it also answers the question of were the offers made firm commercial offers? How could there possibly be 1,179 open orders as of August 27, 1997, if there had never been a commercial offer made? That's the evidence. It is really, you don't need to go any further past Britex's brief in page 6, and then look at appendix page 639. It's all there. Thank you, Mr. Adams. Mr. Galbraith, do you have two minutes? Yes. Counsel for Target admitted that Stanford was an agent of Britex. Just said it two minutes ago. We disagree with that. We believe, and this is an important issue. Where in the record is there any evidence that you put forward to refute quite an amazing amount of evidence that there was some kind of a sales transaction? We've got confidential memos. We've got memos from Fritz and O'Callaghan. And where is there anything that you can, all I want you to do now is point me to something in this record that refutes all of that. Not your argument, something in this record that refutes everything, so that we can see that there is on the record a disputed material issue. OK. Here's the disputed material issue. Once again, they maintain that Stanford was a Britex agent. We maintain that they were a prospective purchaser acting for the big news organization. A398. OK. In 1997, Stanford Distributing Corp. was an independent, third-party distributor of Britex job chair seats. Not an agent, an independent, third-party distributor. Same page with your papers. Stanford contracted with Britex to produce goods that were resold to retail stores. But yet, we don't have any contract here that's been presented. In next page, A400, Britex did sell roundabout seats to Stanford. These are all sworn interrogatory answers. Same page, further down, I believe. Britex agreed to sell a quantity of roundabout seats to Stanford. A405. An offer forwarded by Stanford to its customers is the next one. Right? Oh, I don't have it in front of me. But I believe you. Certainly. A405. Just five pages further down. The prices charged by Britex to Stanford for various seating products nine years ago is not presently known, except that the price was less than the wholesale price of the seats resold by Stanford to its retailers. Products ordered by Stanford from Britex were shipped in the ordinary course of business as inventory permitted, and Stanford paid Britex on commercially reasonable terms. That is not agency. That is Stanford buying the product. So what? Well, and here's why it's important. Wait a minute. OK, go ahead. If he was not a Britex agent, then why doesn't the record fully support the notion that at the August 8 and 9 meeting, the offer was made by Britex to Stanford? Because not all offers rise to that. That's just a general statement. There's all sorts of evidence that there were detailed terms of sale discussed at the August 8 and 9 meeting. I mean, for example, on 205, this guy Fritz says that they offered to sell the thing at the meeting. There's nothing that we can actually examine the language of the offer itself. All that material, except for the confidential memo, all that material does not rise to the level of proof required in Group 1. Final comments, Mr. Brown? So to sum up, if everything except for the confidential memo does not rise to the level of proof clearly set out in Group 1, you can actually look at the offer itself and examine its language closely. The confidential memo, there is a clear issue of fact that the district court declared in the material, saying, hey, now it doesn't matter. Well, it doesn't matter. Thank you, Mr. Brown. All rise.